# WEBB *v.* JANNEY.

### EQUITY PRACTICE; BILL OF REVIVOR; PARTIES.

1. Where a suit in equity to rescind a conveyance of land abates by the death of complainant, the heirs at law or devisees of complainant are the proper parties complainant to a bill of revivor, and not his executor, unless the will creates in the executor a title to the land which authorizes him to prosecute the suit.
2. The probate of a will in this District is only valid in so far as it affects personal estate, and does not even constitute *prima facie* evidence of the due execution of the will as regards the title to real estate.
3. Where in a suit in equity to rescind a conveyance of land for the fraud of the grantee, it appears that the defendant subsequent to his acquirement of title to the property has conveyed the same to a trustee to secure his (the defendant's) promissory note, but that the note remains in the possession of the defendant, the trust deed and note can by decree be cancelled, without making the trustee a party to the suit, although it is safer practice to do so.

No. 557. Submitted April 21, 1896. Decided June 1, 1896.

HEARING on an appeal by the defendant from a decree in a suit to rescind a conveyance of certain real estate. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Henry E. Davis* and *Mr. Chas. Cowles Tucker* for the appellant.

*Mr. W. P. Metcalf* and *Mr. James Coleman* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is a suit in equity begun by Daniel Breed against the appellant, Martin V. Webb, to rescind a conveyance of a lot of land in the city of Washington.

The allegations of the bill and the evidence in support thereof show that the lot belonged to Daniel Breed and was worth at the time of the conveyance, $4,992.50. Daniel Breed was a man about 82 years of age. He agreed to sell the land to Webb for the sum aforesaid. Webb agreed to pay $500 cash, or as much thereof as he could, and execute notes secured by trust deed on the land for the remainder.

December 4, 1893, Webb brought a deed to Mr. Breed's house for his execution. It recited a consideration as paid and received of $100. He paid $50, telling Breed that he would pay more money the next day and execute the trust deed for the remainder. He induced Breed to execute the deed and then took it away. He paid no more money, and failed and refused to execute the trust deed. On February 24, 1894, Breed, through his attorney, offered to return the $50 and receive a reconveyance of the land, or to close up the matter through the execution by the defendant of the trust deed aforesaid. The papers were prepared and the money was tendered him. He refused to receive the money or to execute the trust deed. The bill was filed immediately after this on the same day. On the next day, March 1, and before service of the subpœna, Webb filed for record a trust deed wherein he conveyed the land to one Yeager in trust to secure a note for $800 to one Lou Wilcox. The trustee, Yeager, was not informed of the transaction, and the conveyance and the note to Wilcox remained in Webb's possession until the hearing.

Webb did not testify, and relied solely upon his answer, which was sworn to. His answer is not a denial of the allegations of the bill, but an attempted denial of part and an allegation of matter in avoidance. The parts of the answer upon which he relies are paragraphs 4 and 10, which read as follows:

"4. He admits that the said tract was and is estimated by the complainant to contain 9,985 square feet, which, at the price of 50 cents per square foot, would be worth $4,992.50; but he says that in fact the said land is worth only about 25 cents per square foot, or $2,496.20 in all. He admits that he agreed to buy the said land of the complainant at 50 cents per square foot, but he says that he agreed to the said price only in consideration of the terms on which the complainant agreed to sell the same. The agreement between the complainant and the defendant in that behalf was that the defendant was to buy the said tract of land at the said price, but was to pay on account thereof only a small amount in cash, as much as he conveniently could, which said amount was at first left unascertained, but afterwards fixed by the complainant and the defendant at $100, and that the remainder of the purchase price was to be paid by the defendant when, and not before, the value of the said ground should enhance to $1.00 per square foot by reason of the neighboring improvements hereinafter mentioned, a period of time estimated by the complainant and the defendant not to exceed two years."

"10. And, further answering, the defendant says that at and prior to the 6th day of December, 1893, the complainant was the owner of several acres of ground at Mount Pleasant, in the District of Columbia, including the tract mentioned in the bill of complaint. The defendant was informed by one W. S. Odell that the complainant desired to get some one interested in his property who would undertake to put up some improvements on it. The defendant told the said Odell

that he thought that he, the defendant, could make a satisfactory arrangement to do what the complainant wanted, and a few days later, meeting the said complainant accidentally at the said Odell's office, the said Odell mentioned that he had spoken to the complainant about the matter. Thereupon the complainant and the defendant talked over the matter, and after seeing a builder and consulting him in relation thereto the defendant told the complainant that he thought that he, the defendant, could satisfactorily arrange the matter. The defendant had other and further interviews thereafter with the complainant, both at his house and at the house of the defendant, as well as at the office of the said Odell, with the result that the complainant and the defendant agreed as follows, namely, that the defendant would buy certain portions of the complainant's said land, exclusive, however, of the tract mentioned in the bill of complaint, a part of it at 50 cents per square foot, and part of it at 75 cents per square foot, and part of it at $1.00 per square foot, and erect buildings thereon. The money to be expended in the erection of the said buildings was to be borrowed and secured upon the ground to be taken by the defendant, the complainant to deed the property to the defendant, who in turn was to make deeds of trust to secure the money so to be raised, to give the complainant bond and security for the erection of the said buildings, and also to give the complainant second deeds of trust to secure him, the complainant, the purchase price agreed upon for the ground. The complainant instructed the defendant to have an agreement accordingly prepared in writing, and the defendant employed Charles S. Benjamin, Esquire, attorney and counsellor at law, to prepare the same, which the said Benjamin did. The defendant then gave the said written agreement to the complainant, who examined the same and stated that he was perfectly satisfied therewith, but that he would like to take it to his home and look over it. The complainant took the said paper writing and never returned it to the defendant.

"After the complainant had consented to the arrangement and agreed with the defendant, as above set forth, but before the said agreement had been prepared in writing, the complainant proposed to sell to the defendant the tract of land mentioned in the bill of complaint. The defendant at first declined to buy the said tract, but ultimately agreed to take it upon the terms above stated, and the complainant accordingly deeded it to the defendant."

He further says: "After the said agreement was given the complainant as aforesaid, the complainant asked the defendant to give him, the complainant, a deed of trust upon the tract of land mentioned in the bill of complaint to secure the deferred purchase money therefor, but the defendant persisted that, according to the agreement between himself and the complainant in the premises, the said written agreement as to the said balance aforesaid should first be executed. This the complainant declined to accede to, and the matter was accordingly left in its present shape."

It is extremely doubtful if the agreement set up by Webb in his answer aforesaid could be enforced, even if it had been executed by Breed, because of its vague and uncertain terms and conditions. If otherwise enforceable, it is so unreasonable that it would require slight evidence, in addition to the extreme age of Breed, to warrant a court of equity in decreeing its cancellation as an imposition. But never having been executed by Breed, no proof of it to bind Breed could be made.

The substantial effect of the answer, therefore, is that Webb agreed to purchase the land at Breed's price and to secure the payment of the purchase money, no matter when or how to be paid, by a trust deed upon the property. Instead of embodying a recital of the consideration and the conditions of its payment, as he himself understood it, according to his answer, in the conveyance, or in an agreement, or in the trust deed to accompany it, he procured the signature of Breed to a formal deed reciting a consideration of $100 paid

and received, of which he actually paid the sum of $50 only. He failed to execute and deliver the trust deed which he promised when he procured the execution and delivery of the deed by Breed, and without which promise he would not have secured it; and now coolly asserts in a court of equity, that he has, in violation of law, conscience and good faith, deliberately held the land of this aged complainant as a pledge to compel him to execute and perform an absurd and unconscionable contract.

The court therefore did not err in the view taken of the transaction as disclosed by the answer and the evidence.

We are, however, compelled, with regret, to reverse the decree rendered and to remand the cause for further proceedings, for the reasons now given.

Daniel Breed was too ill to be fully examined as a witness, and died August 17, 1894, before the time for taking testimony had expired. October 19, 1894, Bernard T. Janney filed a motion suggesting the death of Daniel Breed, alleging that he had made a will which had been duly probated, wherein said Janney had been appointed sole executor, and praying to be admitted to prosecute the cause. This was granted, and the cause proceeded in the name of Janney as executor. No formal bill of revivor was filed by him, but he filed an amendment to the original bill, inserting therein a paragraph setting out the death of the complainant, testate, his appointment and qualification as executor, and so forth.

There was no allegation that the land was devised to Janney as executor or in any other capacity. The will itself was not recited or proved.

To authorize the revivor in the name of Janney, and such a decree as was rendered, it should have been alleged and proved that the will created in him a title to the land that authorized him to prosecute the cause; otherwise the necessary party to revive is the heir or heirs at law, or a devisee, if any there be.

The probate of the will, by the law of this District, is only valid in so far as it affects the personal estate of the testator. It has been recently held by the Supreme Court of the United States that the probate does not constitute even *prima facie* evidence of the due excution of the will as regards the title to real estate. *Campbell* v. *Porter*, 162 U. S. 478.

There is another point in the case that may be mentioned, in view of further proceedings to be had.

The decree passed annuls the trust deed made by Webb to Yeager as trustee to secure the note to Lou Wilcox, although the trustee has not been made a party to the suit. If the note was never delivered to Wilcox, but remains in the possession of Webb, the cancellation of the trust deed and note may be made effective without making said Wilcox, if there be such person, a party; though it would be safer practice to do so.

For the error pointed out, the decree will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion; each party paying one-half the costs incurred on this appeal.

*Reversed.*